# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| MARVIN LYNN HILDRETH, JR., <br><br> Plaintiff, <br><br> vs. <br><br> CHAD SHEEHAN, et al., <br><br> Defendants. | No. C23-4010-LTS <br><br> **MEMORANDUM OPINION AND ORDER** |

This matter is before me on an appeal (Doc. 157) by plaintiff Marvin Lynn Hildreth from an order (Doc. 156) filed by Chief United States Magistrate Judge Kelly K.E. Mahoney denying Hildreth's second motion (Doc. 146) for leave to file an amended complaint. Defendants have filed a response. Doc. 158. Hildreth has not filed a reply and the time to do so has passed. Oral argument is not necessary. *See* Local Rule 7(c).

## I.  BACKGROUND

In my March 29, 2024, initial review order (Doc. 5), I chose to treat three documents (Docs. 1-1, 3 and 3-1) as Hildreth's complaint.[1] *Id*. at 5. After initial review, I allowed his free exercise, mail and retaliation claims to proceed against defendants in their individual capacities but denied his failure to protect claim. *Id*. at 6-12. Later, however, I granted Hildreth's motion to reconsider and allowed his failure to protect claim to proceed. Doc. 50 at 17.

On May 6, 2024, Hildreth filed a motion (Doc. 17) for leave to amend his complaint, seeking to: (1) "define and encompass previously listed defendants' duties and capacities regarding this complaint;" (2) provide details regarding his failure to protect

---

[1] These documents are the same as Docs. 6 and 6-1.

claim and (3) add dates to his free exercise claim. *Id.* at 1. I granted his motion as a matter of course because it was filed within 21 days of Hildreth being served with the defendants' answer. Doc. 50 at 9. I determined that this motion to amend would be considered part of his initial complaint. Doc. 50 at 17. In addition to Hildreth's stated goals, this motion to amend added three additional claims: (1) a failure to train and supervise claim related to a failure to protect, (2) a failure to train and supervise claim related to an alleged May 11, 2022, denial of a pastoral visit and (3) a failure to train and supervise claim related to his mail allegations. Doc. 17 at 3-7.

On June 17, 2024, Hildreth filed a supplement (Doc. 34) to his motion to amend. Doc. 50 at 9. He sought to add an allegation that Cara Newman was the Woodbury County Jail front office clerk who prevented his pastor from visiting him on November 24, 2021, and perhaps other times. Doc. 34 at 1-2. Hildreth sought to sue Newman in both her individual and official capacities. *Id.* at 2. He also sought to sue Newman's supervisors, alleging they failed to train and supervise her. *Id.* I allowed him to amend his complaint to sue Newman in her individual capacity but rejected his training and supervision claims. Doc. 50 at 9, 18.

After I granted Hildreth's motion to appoint counsel, counsel appeared on his behalf on January 27, 2025. Doc. 126. On March 20, 2025, the parties appeared before Judge Mahoney for a status conference. Doc. 130. Judge Mahoney set the following deadlines: (1) July 25, 2025 – plaintiff's expert disclosures; (2) August 1, 2025 – joint status report; (3) August 29, 2025 – close of discovery and (4) September 30, 2025 – dispositive motions. Doc. 131. There was no deadline to amend pleadings. *Id.* At the parties' request, on August 6, 2025, Judge Mahoney extended the dispositive motions deadline to October 31, 2025. Doc. 134; Doc. 135.

In their August 1, 2025, motion (Doc. 134) to extend scheduling order deadlines, the parties noted that Hildreth had discussed filing an amended complaint but had not done so. *Id.* In fact, Hildreth had discussed filing an amended complaint as early as June 9, 2025. Doc. 142-1 at 1-2. On October 27, 2025, four days before the dispositive

2

motion deadline, Hildreth filed a motion (Doc. 137) for leave to file an amended complaint. In his proposed amended complaint (Doc. 137-1) Hildreth sought to add the previously rejected training and supervision claim against Newman's supervisors. *Id.* 11-17. He added new theories to support his retaliation claim, alleging that after he filed a grievance, a defendant retaliated against him by threatening to revoke his book access and that defendants used temporary housing as a form of retaliation. *Id.* at 17 ¶ 162-68. Defendants resisted the motion to amend. Doc. 142. Judge Mahoney issued an order (Doc. 143) on November 7, 2025, denying his motion to amend because "the proposed amended complaint appears to add claims and allegations that have previously been dismissed or amendment denied. Amendment to add the failure-to-train claims at this late stage would unduly prejudice Defendants, since discovery has closed, and Defendants have moved for summary judgment." Doc. 143 at 3.

Rather than appealing the denial, Hildreth filed a second motion (Doc. 146) for leave to amend on December 1, 2025. Although he removed the "failure to train and supervise" language related to Newman's alleged denial of pastoral care, his proposed amended complaint retained facts related to this claim. *Id.* at 38. The second motion for leave to amend also retained the factual allegations that defendants had retaliated by threatening to revoke his book access and by placing him in temporary housing. *Id.* at 43-44.

Defendants filed a resistance. Doc. 152. On January 8, 2026, Judge Mahoney issued an order (Doc. 156) denying Hildreth's second motion for leave to amend. The order incorporated her previous denial (Doc. 143) by stating "[t]he court continues to find that Defendants would be unduly prejudiced by the addition of any new claims or allegations that they have not had the opportunity to conduct discovery on, since discovery has closed and summary judgment has been briefed." Doc. 156 at 2. Hildreth now appeals the denial under Federal Rule of Civil Procedure 72(a). Doc. 157.

In his appeal, Hildreth presents the following objection:

> The magistrate judge's order denying the Plaintiff's Second Motion for Leave to Amend was erroneous and contrary to law because the judge failed to recite or use the relevant legal standards under Rule 15 of the Federal Rules of Civil Procedure and also failed to adequate[ly] apply the standards set forth in that rule.

*Id.* at 4. He argues that the decision "relied on clearly erroneous facts because there is no evidence that discovery needed to be reopened" and "contrary to law because the legal standards are both missing and misapplied." *Id.* at 6.

## II.   STANDARD OF REVIEW

28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure Rule 72(a) and Local Rule 72 each provide for review by a district judge of a magistrate judge's order on non-dispositive motions in civil actions. On review under § 636(b) or Rule 72(a), the district judge may modify or set aside any parts of the magistrate judge's order that are "clearly erroneous or contrary to law." *See also Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007) ("A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is clearly erroneous or contrary to law.") (citing § 636(b)(1)(A)).

Although the Eighth Circuit Court of Appeals does not appear to have clarified the meaning of "clearly erroneous" in the context of a district court's review of a magistrate judge's order on a non-dispositive matter, the court's formulation of the "clearly erroneous" standard for its own review of a lower court's ruling is as follows: "A district court clearly errs if its findings are not supported by substantial evidence in the record, if the findings are based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error has been made." *Story v. Norwood*, 659 F.3d 680, 685 (8th Cir. 2011) (cleaned up). Like other courts, I read "contrary to law" within the meaning of Rule 72(a) and § 636(b)(1)(A) to mean the failure to apply or the misapplication of relevant statutes, case law, or rules of procedure. *See Progressive Cas. Ins. Co. v. F.D.I.C.*, 49 F. Supp. 3d 545, 549 (N.D. Iowa 2014) (collecting cases).

4

### III. DISCUSSION

Hildreth argues his amended complaint would not prejudice the defendants. Doc. 157 at 5-11. He claims it would not require reopening discovery because the parties have previously discussed his book access.[2] *Id.* at 9-10. Next, he argues that reopening discovery would not prejudice defendants because they already possess the discovery materials. *Id.* at 10-12. He argues that completely denying leave to amend was erroneous both because the court must consider how denying an amendment prejudices the moving party and because the court could allow an amendment but strike one "troublesome paragraph," which he alleges is the paragraph related to book access only. *Id.* at 12-13. He contends that the amendment would not prejudice defendants because the amendment would not change the theory of the case. *Id.* at 13-14. He claims that "[i]n the present case, no new theories or claims were added – just facts." *Id.* at 13.

In response, defendants argue that prejudice exists because Hildreth "attempted to add eight new allegations and attempted to pursue supervision and training claims." Doc. 158 at 2. Defendants claim that the court has rejected adding these claims on several occasions. *Id.* at 2-3. Defendants argue prejudice would arise because Hildreth "made these attempts after discovery was closed and after summary judgment was filed." *Id.* at 3. In response to Hildreth's argument that defendants had not shown how they were prejudiced, they argue "[r]eopening discovery, supplementing summary judgment filings, and consuming the jury with previously rejected supervision and training claims is the 'prejudice' pointed out by Defendants." *Id.*

Defendants contest Hildreth's one "troubling paragraph" characterization, arguing that "[t]here is not one troublesome paragraph, there are eighteen." *Id.* at 4. Defendants argue that denying the entire amendment was appropriate because Hildreth "had his

---

[2] Judge Mahoney found that Hildreth's "proposed amended complaint does add new claims—for example, it alleges Defendants retaliated against Plaintiff by restricting his access to books after he filed a grievance for lost books." Doc. 156 at 2. He reads this out of context and incorrectly argues she found that he had added the book access claim only. Doc. 157 at 9-10.

5

chance to simply convert the non-dismissed handwritten allegations into typed written form and to propose the typed form as an amended complaint," but "he tried to slip extra allegations and claims into the complaint." *Id.* Lastly, the defendants argue that undue delay exists because although Hildreth sought amendment nine months before trial, this was six months after his counsel stated that he would file an amended complaint. *Id.*

A party may amend its pleading once as a matter of course within a limited period of time after filing it. Fed. R. Civ. P. 15(a)(1). Once that period has expired, a pleading may be amended "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Such leave, when sought, "shall be freely given when justice so requires." *Id.* There is, however, no absolute right to amend a pleading. *See, e.g.*, *Hammer v. Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003); *Becker v. Univ. of Nebraska*, 191 F.3d 904, 908 (8th Cir. 1999); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994). Notwithstanding Rule 15's liberal amendment policy,[3] a motion to amend may be denied on grounds of "undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *In re Target Corp. Sec. Litig.*, 955 F.3d 738, 744 (8th Cir. 2020) (quoting *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)). Undue prejudice was the basis for Judge Mahoney's decision. Doc. 156.

"Delay alone is not a reason in and of itself to deny leave to amend; the delay must have resulted in unfair prejudice to the party opposing amendment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001). The party opposing amendment has the burden to show prejudice. *Id.* Further, "even where some prejudice to the adverse party would result if the motion to amend were granted, that prejudice must be

---

[3] The scheduling order did not set a deadline to amend pleadings. Therefore, the standard set out in Rule 15(a) applies, rather than the "good cause" standard of Rule 16(b), which applies when an amendment is sought after a scheduling order deadline. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008).

balanced against the hardship to the moving party if it is denied." *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981).

When amendments add new theories, the Eighth Circuit has frequently determined that district courts did not abuse their discretion in refusing amendment. *See, e.g.*, *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) ("[W]hen late tendered amendments involve new theories of recovery and impose additional discovery requirements, courts are less likely to find an abuse of discretion due to the prejudice involved."); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 841 (8th Cir. 2004) (holding that district court did not abuse discretion in denying request to amend complaint including new claim that was not related enough to the original claim to put defendant "on notice that [plaintiff] was pursuing such a claim").

I find that defendants have met their burden in showing an amendment would unduly prejudice them. Specifically, when combined, the following circumstances would prejudice the defendants if the motion for leave to amend was granted: (1) the assertion of a rejected failure to train and supervise claim and new theories of retaliation, (2) the dismissal of the pending summary judgment motion and (3) the need to reopen discovery.

Hildreth claims that "[i]n the present case, no new theories or claims were added – just facts." Doc. 157 at 13. He argues that his allegations have long been in the record. Doc. 154 at 2-3. He lists eight contested paragraphs: 22, 24, 29, 36, 63, 71-72 and 85, and where the factual allegations are supposedly present.[4] *Id.* at 3. These documents include a motion (Doc. 92) to compel and a motion (Doc. 64) to amend, both of which were denied. Doc. 65; Doc. 108. With his novel theories of retaliation, paragraphs 71 and 72, he merely states they appear "somewhere in one of the pro se complaints or filings." *Id.* I have reviewed the documents comprising his complaint and these retaliation theories based on denying book access and temporary housing are not present.

---

[4] Defendants contest 18 paragraphs of the proposed amended complaint: ¶¶ 22, 24, 29, 36, 63, 71-72, 85, 88, 94-98, 110-11 and 125-26. Doc. 157 at 3 ¶ 11. However, some of these paragraphs detail failure to train and supervise claims that were added to the complaint in Doc. 17.

Hildreth asserts that his amendment would not add new theories or claims. He is wrong. On July 18, 2024, I allowed him to add Cara Newman as a defendant. Doc. 50 at 9. Although I allowed him to sue Newman in her individual capacity, I rejected his request to add claims regarding her supervisors' failure to train or supervise. *Id*. He tries, yet again, to reassert this rejected claim. Moreover, he adds new theories for how defendants allegedly retaliated against him.

Next, because of the rejected failure to supervise claim and the new retaliation theories, allowing amendment would require discovery to be reopened – nearly six months after it closed on August 29, 2025. Doc. 134. Confusingly, without acknowledging that he was attempting to add the failure to train and supervise claim or the temporary housing as retaliation theory, Hildreth claims that discovery would not need to be reopened because "the book allegations in the retaliation [] claim has already been discussed during discovery." Doc. 157 at 9-10. This assertion ignores his attempt to add the rejected claim and the new temporary housing theory. Despite his protests otherwise, this would clearly require the defendants to pursue additional discovery, as they would have had no need to investigate these claims and theories previously.

Hildreth claims that even if discovery reopened, this would not prejudice the defendants. He states "there is no prejudice where 'the facts on which a previously unasserted claim is based are all known or available to all parties.'" Doc. 157 at 10 (quoting *Buder*, 644 F.2d at 695). In *Buder*, the court ruled the district court abused its discretion when it denied the plaintiff's request to amend its complaint to include a new claim that had facts "substantially similar to those which form the basis of their [original] claim." *Buder*, 644 F.2d at 695. The previously rejected training and supervision claim and new retaliation theories do not depend on facts "substantially similar" to his other claims.

Hildreth continues, stating "[t]he inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party." Doc. 157 at 11 (quoting *Popp Telcom v. American Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 1999).

8

His reliance on *Popp Telcom* is misplaced because the court did not rule on whether prejudice existed in determining the district court abused its discretion. 210 F.3d at 944. It is helpful to review the snippet Hildreth has cited within its broader context:

> The inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party. *See Buder*, 644 F.2d at 694. A liberal amendment policy, however, is in no way an absolute right to amend. *See Thompson–El*, 876 F.2d. at 67. Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend. *See id.* at 68 (upholding lower court's refusal of motion to amend out of concern for extra discovery requirements and attendant delay).

*Id.* at 943. Despite Hildreth's arguments otherwise, his proposed amendments would require additional discovery. Further, his proposed amendment would significantly delay the proceedings due to the snowballing effect of reopening discovery and resubmitting dispositive motions, which were filed more than three months ago. Because trial is scheduled to begin in seven months, this could even impact the trial date. If the trial were continued, this would cause significant delay because my docket requires setting civil trials well into the future.

Hildreth further argues "an 'adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.'" Doc. 157 at 11 (quoting *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 526 (8th Cir. 2000)). Although reopening discovery alone might not warrant denying a motion to amend, here it combines with several other factors. This situation involves the combination of the new claims and theories, a pending summary judgment motion and closed discovery. Although not cited by either party, in *Hammer v. Osage Beach*, 318 F.3d 832 (8th Cir. 2003), the court found that a district court did not abuse its discretion when it denied a second motion for leave to amend "filed after discovery had closed and the [defendant] had moved for summary judgment on the pleaded theories." *Id.* at 844-45. The district court had not identified the reason it denied the motion for leave to file but, in affirming the decision, the Eighth Circuit noted that the second motion for leave

9

included a theory that was not reasonably related to previously pleaded allegations that would have provided defendants notice that plaintiff was pursuing the additional claim. *Id.* at 844. The circumstances here are analogous to those in *Hammer*. After the close of discovery, and while a summary judgment motion is pending on previously asserted theories, Hildreth seeks to assert a previously rejected failure to train and supervise claim and new retaliation theories, neither of which are reasonably related to his other claims.

I must balance the prejudice that amendment would cause defendants "against the hardship to [Hildreth] if it is denied." *Buder*, 644 F.3d at 694. In *Buder*, if the court denied the motion to amend, the plaintiff's case would not be resolved on the merits. *Id.* at 695. In contrast, I am not preventing Hildreth's current claims from being judged on their merits. Instead, I am preventing him from bringing late, unrelated claims and theories that would considerably change the theory of the case and prejudice the defendants. I find that the prejudice the defendants would suffer if I allowed Hildreth to amend his complaint substantially outweighs the prejudice he faces from my denial.

Finally, Hildreth argues that I should not completely deny leave to file because "[t]he book "issue" is one paragraph in a claim that contains seven paragraphs." Doc. 157 at 12. This assertion ignores, yet again, the multitude of claims, theories and facts he seeks to add. Therefore, I find Judge Mahoney's complete denial of his motion to amend was appropriate.

Judge Mahoney's order was neither clearly erroneous nor contrary to law. The denial was not clearly erroneous because Hildreth's added claims would necessitate reopening discovery. The denial was not contrary to law because it incorporated the legal standard stated in the order (Doc. 143) denying the first motion for leave to file an amended complaint. Judge Mahoney then correctly applied the legal standards in finding that Hildreth's amendment would unduly prejudice the defendants. Hildreth's appeal must be denied.

10

Case 5:23-cv-04010-LTS-KEM    Document 159    Filed 03/04/26    Page 10 of 11

## IV. CONCLUSION

For the reasons set forth herein, plaintiff Marvin Lynn Hildreth's appeal (Doc. 157) from the order (Doc. 156) denying his second motion (Doc. 146) for leave to file an amended complaint is **denied**.

**IT IS SO ORDERED** this 4th day of March, 2026.

_____
Leonard T. Strand
United States District Judge